**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Owners Insurance Company, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:22-cv-50396 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Step Seven LLC, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendants' motion to dismiss [31] is denied without prejudice.[1] Accordingly, Defendants' motion to stay discovery pending a ruling on the motion to dismiss [63] is denied as moot.

**BACKGROUND**

In 2020, Step Seven, LLC owned and operated an eight-unit apartment building located at 908 West Third Street in Sterling, Illinois. Complaint ¶ 9, Dkt. 13. On or about June 1, 2020, a fire was set to the apartment building, which resulted in the deaths of Carrie Hose, C.R.S., and S.W. and injuries to Alma Walker, T.S., E.S., and S.M.W. Complaint ¶¶ 9, 13, Dkt. 13.[2] Steven Coleman is currently in custody at the Whiteside County Jail pending criminal charges relating to the fire. Answer, Dkt. 50.

At the time of the fire, Step Seven, LLC's apartment building was insured by Policy No. 194604-07277953-20 (the Policy) issued by Owners Insurance Company (Owners) for the period of April 17, 2020 to April 17, 2021. Complaint ¶ 9, Dkt. 13; Dkt. 13-1. The Policy's "Coverage A

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkts. 40, 55, 58.
[2] Minors are identified by their initials pursuant to Fed. R. Civ. P. 5.2(a)(3).

1

– Bodily Injury and Property Damage Liability" coverage had an "Each Occurrence" limit of $1 million and a "General Aggregate" limit of $4 million. Complaint ¶ 10, Dkt. 13; Dkt. 13-1 at 10, 47, 58. The Policy's "Limits of Insurance" section provided, in pertinent part:

> the Each Occurrence Limit is the most we will pay for the sum of:
> **a.** Damages under Coverage A; and
> **b.** Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence."

Dkt. 13-1 at 66. The Policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Dkt. 13-1 at 68. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 31-1 at 70.

Alma Walker, the Estate of C.R.S., E.S., T.S., the Estate of Carrie Hose, the Estate of S.W., and S.M.W. submitted claims under the Policy. Complaint ¶ 14, Dkt. 13. Their claims range from $250,000 to $20 million. Complaint ¶ 15, Dkt. 13. In May 2022, they also filed suit against Step Seven, LLC, Aaron Young, Dianah Young (managers/members of Step Seven, LLC), and Steven Coleman in the Fourteenth Judicial Circuit in Whiteside County, Illinois, Case No. 2022 LA 17 (consolidated for discovery with Case No. 2022 LA 18), alleging that their negligence caused the fire and the resulting injuries and deaths. Complaint ¶ 16, Dkt. 13; Dkts. 31-1, 31-2. They generally allege that Steven Coleman knowingly ignited the fire and that Step Seven, LLC, Aaron Young, and Dianah Young failed to provide or adequately maintain smoke/fire alarms, exit lighting and/or emergency lighting, and safe and habitable construction with a suitable means of emergency egress. Dkt. 31-2. Step Seven, LLC, Aaron Young, and Dianah Young denied any liability and filed counterclaims against Steven Coleman and two of the underlying plaintiffs. Dkt. 31-2.

In November 2022, Owners intervened in the state tort action and filed a complaint for interpleader. Complaint ¶ 18, Dkt. 13. In the event of liability, Owners seeks "to interplead the

$1,000,000 per occurrence limit to the Court to allow the Claimants to seek a judicial determination of their respective rights to the same." Dkt. 13-2. Owners named all parties to the state tort action as defendants. Owners also filed the instant declaratory judgment action against the same parties. Dkts. 1, 10. In the event of liability, Owners seeks a declaration that the fire constitutes a single occurrence under the Policy, thereby limiting any recovery by the injured occupants to the $1 million per occurrence limit, rather than the $4 million aggregate limit. Complaint, Dkt. 13.

Step Seven, LLC, Aaron Young, Dianah Young, and Steven Coleman answered the complaint. Dkts. 34, 36, 38, 50. Alma Walker, the Estate of C.R.S., E.S., T.S., and the Estate of Carrie Hose filed a motion to dismiss asking this Court to exercise its discretion to dismiss the declaratory judgment action because of the parallel state court proceedings. Dkt. 31. The Estate of S.W. and S.M.W. joined in the motion to dismiss. Dkt. 56. Owners has responded, and Defendants have replied. Dkts. 42, 44. Alma Walker, the Estate of C.R.S., E.S., T.S., and the Estate of Carrie Hose have also filed a motion to stay discovery pending a ruling on the motion to dismiss. Dkt. 63. Plaintiff has responded to that motion. Dkt. 65. This Court will first address the motion to dismiss.

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint for declaratory judgment "pursuant to the Court's statutorily-conferred discretionary power and in accordance with the *Wilton-Brillhard* abstention doctrine." Dkt. 31 at 1. The Declaratory Judgment Act provides that a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "The discretionary nature of the Act led the Supreme Court to hold in *Brillhart* and *Wilton* that district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in

the sound exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

While "there is no set criteria for when a court should exercise its discretion" to decline to hear a declaratory judgment action, "the classic example of when abstention is proper occurs where [ ] solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision*, 604 F.3d at 986. "Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Id.* The court's inquiry is focused on "whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *Id.* at 987 (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir.2005)).

In support of dismissal, Defendants argue that the instant declaratory judgment action and the state proceedings are parallel because they embrace "the same parties and the same issues." Defs.' Mt. at 5, Dkt. 31. Owners does not dispute that it is a party to the state court proceedings, namely as a plaintiff to the interpleader complaint where it has sued all parties named in the instant complaint. Accordingly, this Court agrees that the parties in the instant case and the underlying state interpleader action are the same.

However, Owners argues that the issues raised in the instant case are fundamentally distinct from those raised in the state court proceedings. This Court agrees. Before this Court is Owners' declaratory judgment complaint, seeking a declaration under the Policy as to the coverage limits owed to the injured parties in the event of liability. Specifically, Owners seeks a declaration that

the fire constitutes a single occurrence, thereby limiting any potential recovery by the claimants to the $1 million per occurrence limit.

By contrast, the state court tort complaint involves claims of negligence for the underlying injuries and deaths and seeks a determination as to liability and damages. Owners' complaint for interpleader involves a determination of the claimants' rights to the insurance proceeds under the Policy in the event of liability. The purpose of Illinois' interpleader statute, 735 ILCS 5/2-409, "is to permit a neutral stakeholder to seek a judicial determination of the rights to a specific fund of money where there are conflicting or disputed claims to that fund." *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 911 N.E.2d 1180, 1188 (Ill. App. 1st Dist. 2009). Although Owners has filed a complaint for interpleader to deposit the insurance proceeds and "allow the Claimants to seek a judicial determination of their respective rights to the same," Dkt. 13-2, it does not seek a declaration under the Policy like it does in this Court. As Owners points out, Defendants have not yet answered the complaint for interpleader, opting instead to file a motion to stay pending this Court's ruling on the motion to dismiss. Accordingly, to date no party has asked the state court to determine the coverage limit issue pending before this Court.

While Defendants may be able to file a counterclaim to Owners' interpleader complaint to seek a declaration under the Policy[3] and Owners may be able to file a standalone declaratory judgment action in state court, at this point no such actions have been filed. *See Atl. Cas. Ins. Co. v. Right Way Auto Sales, LLC*, 2:21-CV-194-JPK, 2022 WL 910560, at *10 (N.D. Ind. Mar. 29, 2022) (finding it unnecessary to dismiss a declaratory judgment action for "some yet-to be filed action brought in state court") (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371,

---

[3] *See Bituminous Cas. Corp. v. Iles*, 992 N.E.2d 1257, 1260 (Ill. App. 5th Dist. 2013) (noting that party filed a counterclaim to the interpleader complaint seeking a declaratory judgment); *W. Bend Mut. Ins. Co. v. Vaughan's Fetch, Inc.*, 2022 IL App (5th) 210168-U, at *2 (unpublished), *as modified on denial of reh'g* (Apr. 21, 2022) (same).

379 (4th Cir. 1994)). Accordingly, on the facts before this Court, the parties are not "contemporaneously litigating substantially the same issues in two fora." *Envision*, 604 F.3d at 986. Defendants admit that the coverage limits issue before this Court is not currently before the state court. *See* Dkt. 42-1 at 3 ("If the federal court grants the motion to dismiss, then a declaratory judgment action *will be filed* in state court, whereby the state court will decide the applicable policy limit.") (emphasis added). Consequently, there is not "a substantial likelihood that the [state court] litigation will dispose of [the coverage limit issue] presented in the federal case." *Envision*, 604 F.3d at 987. Therefore, it is not clear to the Court at this stage that the instant proceeding and the state court proceedings are parallel. This weighs in favor of this Court exercising jurisdiction over the instant case to resolve a question distinct from the issues raised in the state court proceedings. However, this does not end the Court's inquiry.

"When a related state action is pending, concerns about comity, the efficient allocation of judicial resources, and fairness to the parties come into play." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). Accordingly, the Seventh Circuit has stated that a district court's discretion to stay or dismiss a declaratory judgment action is not "limited to parallel proceedings," noting that *Wilton* "did not indicate that parallel proceedings were either necessary or sufficient." *Envision*, 604 F.3d at 986; *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) ("Even if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit."). Instead, the Seventh Circuit has set forth several factors to guide courts in exercising its discretion, including:

> whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is

available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Zavalis*, 52 F.3d at 692.

This Court has already addressed the first two factors in determining that the instant proceeding and the state court proceedings are not currently parallel. This Court will now weigh the two remaining factors outlined above.

As to whether proceeding with the instant action will clarify the parties' legal obligations or merely amount to duplicative and piecemeal litigation, Defendants admit that Owners' duty to the injured parties would be clarified if this Court determined the coverage limit issue in the instant case. Defendants argue only that this Court should dismiss this action because there is significant factual overlap between the instant proceeding and the state court proceedings such that a declaration on the limits under the Policy, "would very likely require the Federal Court to make determinations about causation that are fundamental to the resolution of the underlying State Court proceedings." Defs.' Reply at 3, Dkt. 44. Defendants explain that interpreting the number of occurrences under the Policy would likely require application of the "cause theory" under Illinois law, which they argue would "would require a detailed factual analysis and finding relative to the ultimate causes of the injuries and deaths." Defs.' Mt. at 6.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 755 (7th Cir. 2006) (citation omitted). Accordingly, this Court should exercise its discretion to decline to hear the instant declaratory judgment action if it would involve the "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S. at 495. When making this determination, the Seventh Circuit has "described the proper inquiry as asking 'how real [is the] prospect' that 'the declaratory action may present factual

7

questions that the state court has also been asked to decide.'" *Hellman*, 610 F.3d at 379 (citing *Zavalis*, 52 F.3d at 693).

Here, Defendants argue that because the underlying facts on liability in the state tort action are disputed, resolution of the coverage limit issue "will *most likely* require the resolution of the proximate cause issue at the State Court level." Defs.' Reply at 5, Dkt. 44 (emphasis added). Defendants state that Illinois courts apply the cause theory when interpreting an insurance policy to determine whether an event constitutes a single occurrence or multiple occurrences for purposes of coverage limitations. "Under the cause theory, the number of occurrences is determined according to the number of 'separate and intervening human acts' giving rise to the claims under the policy." *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 325 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated Elec. & Gas Ins. Services Ltd.*, 860 N.E.2d 280, 287, 294 (Ill. 2006). Owners disagrees, arguing that Defendants have failed to identify the specific factual issues that must be resolved in this case that are central to and will interfere with the state court proceedings.

However, neither side has cited to any cases where a court has evaluated whether declining jurisdiction under the *Wilton/Brillhard* doctrine is required because of factual overlap between the interpretation of an insurance policy under the cause theory in a declaratory judgment action and determining proximate cause for liability purposes in an underlying tort action.[4] Moreover, neither side has argued one way or the other that determining whether an individual act of negligence was the proximate cause of the injuries alleged in an underlying tort complaint requires the same analysis as determining whether the claims made under an insurance policy arise out of more than

---

[4] Even though Defendants argue that the proceedings in this Court and the state court overlap on "the critical issue of causation," the few cases they cite either do not discuss the cause theory or apply the cause theory but do not discuss any potential overlap between application of the cause theory and findings of proximate causation. *See* Defs.' Mt. at 6, Dkt. 31; Defs.' Reply at 2-3, Dkt. 44.

one occurrence under the cause theory.[5] Defendants merely state that resolution of the coverage issue "will *most likely* require the resolution of the proximate cause issue" in the underlying tort action. Defs.' Reply at 5, Dkt. 44 (emphasis added). That is not enough. It is not for this Court to construct the parties' legal arguments or flesh out their arguments. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013) ("[J]udges are not like pigs, hunting for truffles buried in briefs ... or in the record."). Nevertheless, this Court's research has revealed two cases that it finds helpful to deciding this issue.[6]

In *Evanston Ins. Co. v. Barkandbrew, Inc.*, 09 CV 2295 JLS (POR), 2010 WL 2573209 (S.D. Cal. June 22, 2010),[7] the defendants sought dismissal or a stay of the federal declaratory judgment action, arguing that there were several facts at issue in the underlying tort action that would determine the outcome of the declaratory judgment, "namely, who or what 'caused' Emery's death and the number of qualifying 'occurrences/common causes.'" *Id.* at *3. In ruling that dismissal or a stay on this basis was not appropriate, the court found that the factual determinations that would ultimately determine proximate causation in the underlying tort action[8] were irrelevant to the determination of what constitutes an occurrence under the language of the

[5] Both sides spend an inordinate amount of time analyzing one district court case out of the Northern District of Indiana, namely *Right Way*, 2022 WL 910560. Owners relies on this case to argue that courts routinely decide coverage limit issues when the state court is asked only to decide liability. Defendants attempt to distinguish this case. Regardless, this Court finds *Right Way* unhelpful to deciding the instant case because it does not analyze the possible overlap between findings of proximate cause in the underlying tort action and the cause theory when interpreting the insurance policy.

[6] This Court will discuss the cases it found helpful; however, this Court is by no means saying that this is an exhaustive analysis. Without the benefit of the parties' arguments and analysis on this issue, the Court is not inclined to go into a detailed recitation of the cause theory as applied to this case.

[7] California courts also apply the cause theory to determine the number of occurrences under an insurance policy. *See, e.g., Landmark Am. Ins. Co. v. Liberty Surplus Ins. Corp.*, CV1210728MWFJEMX, 2014 WL 12558121, at *3 (C.D. Cal. Apr. 9, 2014).

[8] The court found that the underlying tort action would determine: "the knowledge and state of mind of BarkandBrew, whether similar incidents have transpired at the Brew House, whether BarkandBrew knew or had reason to know the five defendants were dangerous, and the time that elapsed between the serving of alcohol and Emery's beating." *Barkandbrew, Inc.*, 2010 WL 2573209, at * 3.

insurance policy. The court stated that what constitutes an occurrence under the insurance policy was a "legal determination involving the language of the contract," which did not require "the factual determination of proximate causation" that was involved in the underlying tort action. *Id.* at *3.

The Seventh Circuit in *Munroe* made a similar distinction when it stated that the cause theory is used to determine the number of occurrences by looking to "the number of separate and intervening human acts giving rise to the *claims* under the policy." *Munroe*, 614 F.3d at 325 (internal quotation marks and citation omitted) (emphasis added). In conducting its analysis, the *Munroe* court did not discuss proximate cause issues arising in the underlying tort action. In fact, the court commented on the difference by noting that the injured party had "one claim against the trucking company and the drivers, allegedly caused by three separate acts of negligence. This single claim gives rise to a single occurrence under the insurance policy." *Id.* at 326. Thus, determining the number of occurrences giving rise to a claim under an insurance policy does not necessarily equate with determining the number of negligent acts that proximately caused the injures identified in the underlying state tort complaint.

In deciding the coverage limit issue in the instant case, this Court is tasked with making a legal determination under contract principles. This will require this Court to interpret the term "occurrence" under the Policy by determining the number of separate and intervening human acts giving rise to the claims under that Policy. By contrast, the state court is tasked with determining whether the underlying defendants' alleged acts of negligence were the proximate cause or causes of the injuries as alleged in the underlying tort complaint based on tort principles. *See* Illinois Pattern Jury Instruction, Civil, No. 15.01 (2021) (defining proximate cause to mean "a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. [It need not be the only

10

cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.]").

Accordingly, the fact that the injured parties in the underlying tort action allege numerous acts of negligence on behalf of Step Seven, LLC, Aaron Young, Dianah Young, and Steven Coleman or that liability is disputed does not in itself establish that this Court will be required to make the same proximate cause findings as to each alleged act of negligence under tort principles that the state court is tasked with making.[9] *See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 139 F. Supp. 2d 943, 946 (N.D. Ill. 2001) ("[I]n Illinois, the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate.") (citing *Transamerica Ins. Co. v. South*, 125 F.3d 392, 398 (7th Cir. 1997); *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1101 (N.D. Ill. 2001)). But again, neither side has provided any authority or analysis on this complex issue.

"Federal courts should be reluctant to decide factual issues which are currently at issue in state court. This is to prevent the federal court from collaterally estopping the parties from litigating the issue further in state court, disrupting the underlying state court action, and adversely impacting the promotion of comity between federal and state courts." *Barkandbrew, Inc.*, 2010 WL 2573209, at *2 (internal quotation marks and citation omitted). However, neither side argues that this Court's determination of the number of occurrences under the terms of the Policy would collaterally estop the parties from litigating the issues of liability in the underlying tort action. Without further development by the parties, this Court will not make such a finding. *See id.* at *4 (finding that the court's "interpretation of the contract language is not binding on the state court in the Underlying Action and therefore will have no collateral estoppel effect.").

---

[9] The Court notes that it is not making any findings on the ultimate issues in this case. It is discussing these issues based on the limited record before it.

Based on the current record, it is not clear to this Court that it would be required to decide the same issues of liability pending before the state court to determine the extent of coverage under the Policy. This Court will not assume that the only way to interpret the Policy is by resolving underlying causation issues as to liability pending before the state court. *See Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 381 (7th Cir. 2010) ("We are not willing to assume that the only way Medical Assurance can prove its [declaratory judgment action] is through an excursion into factual questions that the state courts have been, or will be, asked to address."). Defendants' allegation of some factual overlap alone does not necessarily show an interference with the state court's determination of liability. If there is no real prospect that the instant declaratory judgment action presents factual questions that the state court has also been asked to decide, this Court can exercise its discretion to hear the case. *See Hellman*, 610 F.3d at 379. In light of the parties' failure to cite to any cases directly on point or provide a cogent argument explaining why the same proximate cause analysis to be applied in the state tort action is applicable in the instant case, this Court is not convinced that it is required to decline to exercise jurisdiction in this case.

There may be a reason to wait until the state court resolves the underlying issue of liability, but it is not apparent to the Court at this stage. Defendants have not provided this Court with sufficient facts to make that determination. If in proceeding with discovery, it becomes clear that this Court will be required to make a factual or legal determination that is central to the state court proceedings, Defendants shall file a renewed motion to dismiss or stay that details the underlying facts at issue and explains why this Court would be required to decide the same issue pending before the state court.[10] Based on the facts before it, this Court finds that determining the coverage

---

[10] *See Wilton*, 515 U.S. 288 n.2 ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferred course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").

issue at this stage will serve a useful purpose in clarifying Owners' obligations under the Policy as well as the Declaratory Judgment Act's goal of allowing for the "efficient resolution of disputes by an early adjudication of the rights of the parties." *See Hellman*, 610 F.3d at 377. Moreover, "settling the dispute [here] will *avoid* duplicative litigation, considering that the parties have already begun to litigate the issue of coverage in the federal forum." *Right Way*, 2022 WL 910560, at *10 (citing *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 289 (3d Cir. 2017) (emphasis in original)). Accordingly, this factor weighs in favor of exercising jurisdiction.

The last factor outlined above is whether comparable relief is available to Owners in another forum or at another time. As discussed above, Owners has intervened in the state tort action to deposit the $1 million in insurance proceeds but opted to file a declaratory judgment action in this Court instead of in state court. Additionally, no other party has filed a declaratory judgment action in state court. However, no party argues that Owners or the injured parties are precluded from filing a declaratory judgment action in state court, either as part of the complaint for interpleader or as a stand-alone action, to address the coverage limit issue. Accordingly, this factor weighs in favor of declining jurisdiction.

Nevertheless, requiring Owners to file its own declaratory action in state court, wait until another party files such an action, or wait until the state tort action is resolved to obtain the relief it seeks here does not further the purpose of the Declaratory Judgement Act. *See Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir. 1970) ("We do not believe that, considering the purposes of the Federal Declaratory Judgment Act, the plaintiff should be forced into a waiting period of legal uncertainty respecting the obligations it has incurred in its policy."); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). "The goal of the Declaratory Judgment Act is to allow for the

efficient resolution of disputes by an early adjudication of the rights of the parties." *Hellman*, 610 F.3d at 377. Defendants do not argue, and this Court does not find, that dismissing or staying the instant declaratory judgment action in favor of possible state court alternatives would be more efficient than allowing the coverage limit issue to proceed.

Accordingly, after considering the above factors and based on the current record, this Court finds it unnecessary to decline jurisdiction under the Declaratory Judgment Act and dismiss or stay this case.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [31] is denied without prejudice. Accordingly, Defendants' motion to stay discovery pending a ruling on the motion to dismiss [63] is denied as moot.

Date: July 14, 2023                    By:    Lisa A. C_____

                                              Lisa A. Jensen
                                              United States Magistrate Judge