**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Owners Insurance Company, | |
| *Plaintiff,* | Case No. 3:22-cv-50396 |
| *V.* | Honorable Michael F. Iasparro |
| Step Seven LLC, et al, | |
| *Defendants.* | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Owners Insurance Company brought this action for declaratory judgment to determine its rights and obligations under an insurance policy it provided.[1] Liability is at issue, but is not a question presented to this Court; Owners is only seeking a declaration that any recovery is limited to the per-occurrence limit described in the insurance policy. The matter is presently before the Court on Owners' motion for summary judgment. For the reasons set forth herein, the motion is denied.

**BACKGROUND**

As a preliminary matter, the Court sees it appropriate to outline the parties to this action. The complainants in the underlying civil suits proceeding in state court ("Claimants") include the following parties appearing as defendants in this case: Alma Walker, individually and as administrator of the estate of C.R.S.; Kathy Hall, as administrator of the estate of Carrie A. Hose; T.S., a minor by her parent and next friend Alma Walker; E.S., a minor by his parent and next

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 59.

friend Alma Walker; Faith Walker, [2] as administrator of the estate of S.W.; and S.M.W., Jr., a minor by his parent and next friend Faith Walker. Dkt. 13, ¶ 5. Dianah L. Young and Aaron P. Young are the managers of Step Seven LLC, the company that owns the apartment building located at 908 W. 3rd Street, Sterling, Illinois 61081 ("the Property"). [3] *Id.* at ¶¶ 4, 9. Steven Coleman deliberately set two fires in the Property on June 1, 2020, leading to the deaths and injuries which form the basis for the underlying civil suits in state court. *Id.* at ¶ 13; Dkt. 121, ¶ 12. Coleman was convicted of multiple crimes in relation to his actions on June 1, 2020, and received three life sentences. Dkt. 106, ¶ 7.

In accordance with Local Rule 56.1, the parties submitted their statements of material facts and responses to those statements. The purpose of this rule "is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Therefore, factual allegations "must be supported by citation to the specific evidentiary material" but "should not contain legal argument." LR 56.1(d)(2)-(4). Strict compliance with this rule is expected as "courts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'" *Curtis*, 807 F.3d at 219 (citing *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)). The Court will not consider Owners' legal arguments poorly disguised as facts. Dkt. 106, ¶¶ 11-16. These paragraphs do not lend themselves to the proper purpose of "identify[ing] for the Court the evidence supporting

---

[2] The parties have included Faith Walker as a defendant in her individual capacity in their Statements of Material Facts. However, Faith Walker was not individually named in the amended complaint and thus is only a party to these proceedings as the administrator of the estate of S.W. and as parent and next friend of S.M.W., Jr. *See* Fed. R. Civ. P. 10(a).

[3] For purposes of this motion, the Court will follow Owners' nomenclature in the following manner: (1) Alma Walker, Kathy Hall, T.S., and E.S. will jointly be referred to as the Alma Walker defendants; (2) S.W. and S.M.W., Jr. will jointly be referred to as the Faith Walker defendants; and (3) Dianah L. Young, Aaron P. Young, and Step Seven will jointly be referred to as Step Seven.

[Owners' motion] in an organized manner," but rather "as a forum for factual [and] legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. Mar. 7, 2000). Neither will the Court consider additional facts put forth by the Faith Walker defendants that provide no citation to the record. Dkt. 115-1, ¶¶ 1, 7.

The pertinent facts, stated most favorably to the non-movants and with non-compliant fact statements disregarded, are as follows. [4] For the period of April 17, 2020, through April 17, 2021, Owners provided Step Seven with an insurance policy ("the Policy") that includes general liability coverage for the Property. Dkt. 106, ¶ 1-2. The Policy provides coverage for "bodily injury" at the Property. *Id.* at ¶ 2. The Policy includes a general aggregate liability limit of $4,000,000 as well as a limit of $1,000,000 for each "occurrence." *Id.* at ¶ 3. An "occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The Policy further explains that this occurrence limit "fixes the most Owners will pay regardless of the number of (a) insureds, (b) claims made or 'suits' brought, or (c) persons or organizations making claims or bringing suits." *Id.* at ¶ 4.

On June 1, 2020, Steven Coleman deliberately set two fires in the Property – one originating at the upper landing of the stairs and one on the stairs to the lower landing. Dkt. 106, ¶ 5; Dkt. 121, ¶¶ 12-13. These two fires were determined by investigators to have no cross

---

[4] Owners asserts that the Alma Walker and Faith Walker defendants have failed to answer its complaint and thus have admitted Owners' allegations by operation of law. Dkt. 105, at *1 n. 1. The Alma Walker defendants filed an answer with court approval when this error was raised. Dkt. 112, 113. The Faith Walker defendants did not. However, Owners took no action against the Faith Walker defendants until this present motion was filed. Even if Owners had requested relief, such as moving for an entry of default, the Court would not be inclined to do so as the Faith Walker defendants have actively participated in these proceedings and responded to this present motion. *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F.Supp.2d 933, 941-42 (N.D. Ind. Nov. 28, 2005). Additionally, a case such as this one would not be benefited by an entry of default when co-defendant-injured parties remain to defend the action. *See Ill. Farmers Ins. Co. v. Stone*, No. 1:14-cv-01714-TWP-DML, 2016 WL 2997564, at *3-4 (S.D. Ind. May 23, 2016).

communication. Dkt. 121, ¶¶ 12, 14. As a result of these fires,[5] S.W., S.M.W., Jr., Alma Walker, E.S., and T.S. were injured and Carrie A. Hose, C.R.S., and S.W. died. Dkt. 106, ¶ 5; Dkt. 115, ¶ 5. These victims were all in the Property when the fires were set but were not all in a single unit. Dkt. 116, ¶ 9.

After completing an investigation, Owners was unable to determine how many smoke detectors were functional at the Property. Dkt. 121, ¶ 10. Owners also has no knowledge of the number of functional emergency and/or exit lights at the Property, nor does it have knowledge of the number or functionality of any fire alarm systems at the Property. *Id.* at ¶ 11.

Claimants filed civil lawsuits in the Fourteenth Judicial Circuit in Whiteside County, Illinois, against Steven Coleman and Step Seven. Dkt. 106, ¶ 8. Claimants also filed claims under the Policy for the death and injuries that resulted from the fires. *Id.* at ¶ 9. Owners believes, in the event of liability, Claimants' joint recovery is limited to the per-occurrence limit of $1,000,000 and intervened in the state court proceedings to interplead this amount. *Id.* at ¶ 10. Owners is now seeking a declaration from this Court that the Policy limits its liability to $1,000,000 for all Claimants combined. *See* Dkt. 13.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant; it does not require that the dispute be resolved conclusively in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

---

[5] Appreciating the concern raised by the Alma Walker defendants in their response, the Court notes that this statement does not preclude the possibility of other contributing factors. *See* Dkt. 120, ¶ 5.

When, as in this case, the party moving for summary judgment also bears the burden of proof, the movant has a higher burden at the summary judgment stage in that "it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). Thus, a movant who bears the burden of proof must prevail as a matter of law based on the record before the court.

## DISCUSSION

All parties seemingly agree that Illinois law controls this case and, specifically, interpretation of the Policy. "Under Illinois law, the construction of a provision of an insurance policy is a question of law, and the court's goal is to determine the intent of the contracting parties." *Sokol and Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). The insured first bears the burden of establishing that a "claim falls within the coverage of an insurance policy." *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 905 N.E.2d 747, 752 (2009). "Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Id.*

Owners does not contest that the claims at issue fall within the coverage of the Policy. Rather, it simply seeks to limit any recovery to the per-occurrence limit of $1,000,000. The rule that the insurer has the burden of proving a limitation is well established in Illinois and applies here. *See Fid. & Cas. Co. v. Sittig*, 181 Ill. 111, 54 N.E. 903, 904 (1899) (explaining that once the insured proved coverage, the burden "devolved on the [insurer] to prove . . . the exception in the policy relied on to avoid payment"); *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087, 234 N.E.3d 97, 105 (2023) ("Generally, the insured bears the burden of proving the claim is covered under the initial grant of coverage, and the insurer bears the burden of proving an exclusion

5

applies."). Owners contends that this motion presents the Court with only two options: "(a) the Fire Event is a single 'occurrence,' . . . or (b) the Fire Event constitutes 'at least' 102 'occurrences.'" Dkt. 105, at *2.[6] Owners is right that there are only two options. However, it is wrong about what those two options are. To be entitled to the declaration Owners is seeking here, it must prove that the deaths and injuries underlying this suit constitute one occurrence as that term is defined in the Policy. Thus, the Court is tasked with determining whether, at this stage of the proceedings, Owners has either: (a) established that there is no genuine issue of material fact such that the Court can determine, as a matter of law, that there was only one occurrence, or (b) it has not. [7]

As outlined above, the Policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Owners describes this as an "unambiguous definition." Dkt. 105, at *2. The Alma Walker defendants, however, argue that the Policy is unclear "as to what constitutes a separate occurrence when an incident involves multiple deaths and/or injuries," making the language of the Policy ambiguous. Dkt. 119, at *5.

When the language in an insurance policy is unambiguous, it "is given its 'plain, ordinary, and popular meaning.'" *Sokol*, 430 F.3d at 420 (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 607 N.E.2d 1204, 1212 (1992)). "Whether an ambiguity exists turns on whether the policy language is subject to more than one *reasonable* interpretation." *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11, 823 N.E.2d 561, 564 (2005) (emphasis added). An ambiguous clause "must be construed in favor of the insured" but this "rule comes into play only

---

[6] For the sake of clarity, all citations to a specific page of a docketed document are based on the CM/ECF stamped page numbers irrespective of the pagination provided by the parties.

[7] With this burden properly placed on Owners, the Court sees no occasion to address Owners' arguments about Defendants' "extreme" number of occurrences or Defendants' "novel legal theories" as they simply have no bearing on the Court's analysis of whether Owners has established only one occurrence.

when there is an ambiguity." *Menke v. Country Mut. Ins. Co*, 78 Ill.2d 420, 401 N.E.2d 539, 541 (1980).

The definition at issue is not ambiguous. "Nothing in [this] definition[] is materially different from the definitions" previously analyzed by Illinois appellate courts, and it is "no more ambiguous in this case than they were in those cases." *Nicor, Inc. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 223 Ill.2d 407, 860 N.E.2d 280, 296 (2006). The Alma Walker defendants cite no authority to support their contention that the Policy's lack of a definition for a separate occurrence creates an ambiguity. In fact, failure to define a term "does not render it ambiguous. . . Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Id.* at 286. Defendants have not outlined, nor does the Court find, an alternative reasonable interpretation and, thus, the Policy is unambiguous.

However, the analysis does not stop there as "the terms of the insurance policy are not always sufficient, standing alone, to permit a definitive determination as to whether a particular case involves one occurrence or many." *Id.* at 287. This definition then must be given its "plain and ordinary meaning" and applied to the facts of the case. *Id.* at 286. It is Owners' burden to prove that the underlying claims are all derived from one occurrence. To be abundantly clear, it is not Defendants' burden to establish multiple, or even more than one, occurrences; it is Owners' burden to establish that there is no genuine issue of material fact that the injuries and claims arising from the events of June 1, 2020, constitute only one occurrence as that term is defined in the Policy. Owners has failed to meet that burden at this juncture.

**I.      Cause Test**

Illinois courts have declined to determine the number of occurrences by looking only at the number of injuries or claims but instead look at the number of causes. *See Ill. Nat. Ins. Co. v.*

*Szczepkowicz*, 185 Ill.App.3d 1091, 542 N.E.2d 90, 92 (1989). Multiple events can create an "uninterrupted continuum" that leads to injuries, but these events are not multiple occurrences if they can "be attributed to a common cause." *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 325 (7th Cir. 2010). Thus, separate occurrences arise when a "loss is the result of a separate and intervening human act, whether negligent or intentional, or each act increased the insured's exposure to liability." *Nicor*, 860 N.E.2d at 294.

Owners contends that its insured Step Seven's alleged negligence in maintaining the Property created an uninterrupted continuum that constituted only one occurrence. Dkt. 105, at *3-7. To support this contention, Owners heavily relies on the Seventh Circuit holding that "'no Illinois court' has ever found multiple occurrences 'merely because several acts of negligence combined to produce a single result.'" *Id.* at *3 (quoting *Munroe*, 614 F.3d at 326). Owners repeated this quote a total of seven times throughout its briefing. The full context of the *Munroe* holding does not support Owners' position. What the *Munroe* court actually said was that "no Illinois court has held that *a single claim or injury* can give rise to multiple occurrences merely because several acts of negligence combined to produce a single result." 614 F.3d at 326 (emphasis added). Not once in its seven citations did Owners include the "single claim or injury" clause. Owners could have "accurately describe[d] the law and then call[ed] for" its expansion but instead chose to simply cut out the critical aspect of the *Munroe* court's decision that distinguishes the *Munroe* case from the facts in dispute here. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). This gamesmanship not only undermines Owner's credibility; it also sinks its motion.

Unlike the precedent Owners relies upon, causation is heavily disputed here. Claimants all contend that Step Seven's negligent property maintenance, in the form of failure to maintain working smoke detectors or fire alarms, for example, was the proximate or contributing cause of

8

their deaths or injuries. *See, e.g.,* Dkt. 115-1, ¶¶ 2-6, 8. Owners is asking this Court to rule as a matter of law that the "Fire Event," as it has defined that term, constitutes a single occurrence under the Policy.[8] But that is the factual issue at the heart of the dispute here and in the underlying state actions. "Under the cause theory, the number of occurrences is determined according to the number of 'separate and intervening human acts' giving rise to the claims under the policy." *Munroe*, 614 F.3d at 325 (quoting *Nicor*, 860 N.E.2d at 294). The parties here disagree on whether there were "separate and intervening human acts" which give rise to the claims under the Policy. As such, there are genuine issues of material fact that a trier of fact will have to decide (perhaps, in the first instance, in the underlying state court lawsuits).

In making its uninterrupted continuum argument, Owners also relies on *Ware v. First Specialty Ins. Corp.*, 2013 IL App (1st) 113340, 983 N.E.2d 1115 (2013). In *Ware*, the plaintiffs were standing on all three floors of a porch when the third floor of the porch collapsed onto the second floor which then collapsed onto the first floor. 983 N.E.2d at 1117. The court found only one occurrence as there was "no dispute that the collapse was the sole and proximate cause of all plaintiffs' injuries, nor [was] there any allegation that any separate or intervening acts or circumstances contributed to their injuries." *Id.* at 1121.

Here, however, there is a dispute as to whether the fire(s) were the sole and proximate cause of all the injuries, as there are disputed allegations of separate, intervening acts. Claimants continue to maintain that their injuries were not caused by the fire(s) alone and that there were two

---

[8] In its Amended Complaint, Owners alleges: "On June 1, 2020, Coleman deliberately set fire to the Property, causing the deaths of Carrie A. Hose, C.R.S., and S.W., and injuries to S.W., Alma Walker, E.S., and T.S. Dkt. 13, ¶ 13. Thereafter, including in its summary judgment briefing, Owners has referred to Coleman's actions as the "Fire Event." Thus, there also appears to be a dispute as to the number (and materiality) of fires Coleman set, where and when they were set, whether they "cross communicated," and how they spread. *Compare* Dkt. 121, ¶¶ 12-14, *and* Dkt. 116 ¶¶ 11-13, *with* Dkt. 127, ¶¶ 12-14, *and* Dkt. 129, ¶¶ 11-13.

separate fires set. The Alma Walker defendants point out that the plaintiffs in *Ware* did not similarly dispute the sole cause of their injuries as Claimants do here. Importantly, "[t]he *Ware* court never reached the issue of whether multiple negligent acts and/or omissions causing multiple injuries and deaths would have constituted more than one occurrence." Dkt. 119, at *8; *see Ware*, 983 N.E.2d at 1121-22 ("There is no dispute that the collapse was the sole and proximate cause of all plaintiffs' injuries, nor is there any allegation that any separate or intervening acts or circumstances contributed to their injuries." Thus, "[T]here can be no question that, under the cause theory, the collapse constituted only one occurrence under the policy.").

To counter the Alma Walker defendants' argument, Owners first argues that the lack of cases directly on point "is not helpful to Defendants." Dkt. 126, at *9. Again, Owners has the burden of proving a single occurrence; Defendants do not have to definitively show more than one. *See Hotel 71*, 778 F.3d at 601; *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (explaining that even an unanswered motion for summary judgment will be denied if the motion fails to "demonstrate[] that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law") (emphasis in original). Thus, even if Defendants cite no case law applying their "exact theory," Owners still must show that its theory does entitle it to summary judgment.

In a bit of linguistic yoga, Owners further cites to the *Ware* opinion and argues that the claimants there did not agree that the collapse was the sole cause of their injuries; they "stipulated" to it. Dkt. 126, at *9-10; *but compare Agree*, Merriam-Webster, https://www.merriam-webster.com/dictionary/agree [https://perma.cc/7VJJ-9Z5E] (last visited July 16, 2025) ("to accept or concede something"), *with Stipulate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/stipulate [https://perma.cc/AV8E-37U8] (last visited July 16, 2025) ("to

10

make an agreement or covenant to do or forbear something"). Not surprisingly, Owners cites no authority that supports its asserted distinction between an agreed fact and a stipulated fact. As the Seventh Circuit has explained, "[a] stipulation is a contract between two parties to *agree* that a certain fact is true." *U.S. v. Barnes*, 602 F.3d 790, 796 (7th Cir. 2010) (emphasis added). The point here is that there was no disagreement as to the cause of the porch collapse in *Ware*, whereas here, there is a genuine and material disagreement as to causation. As discussed above, Claimants have asserted multiple acts of negligence on the part of Step Seven that they believe to be separate and intervening. Perhaps Owners will prevail on its sole proximate cause theory, but Owners has not yet established this theory as a matter of law.

Throughout its motion, Owners continually refers to the alleged negligent acts here as an "uninterrupted continuum." Even assuming Owners had shown that Illinois' application of the cause test precludes a finding of multiple occurrences in an uninterrupted continuum of negligent acts, Owners fails to properly address the Faith Walker defendants' argument that this "continuum" was in fact interrupted by negligent acts that "increased the insured's exposure to liability." Dkt. 114, at *3 (citing *Addison*, 905 N.E.2d at 754).

## II.    Time and space test

Since its formal adoption of the "cause" test in *Nicor*, the Illinois Supreme Court has recognized that the cause test left open "situations where a continuous negligent omission results in insurable injuries" with no limit. *Addison*, 905 N.E.2d at 755. To remedy this "limitless bundling of injuries into a single occurrence," the court adopted the time and space test to be applied "[w]here negligence is the result of an ongoing omission rather than separate affirmative acts." *Id.* at 756. "Under this test, if cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event, then the injuries will be deemed the result

of one occurrence." *Id.* (citation modified). Thus, even assuming that Owners had shown one occurrence under the cause test, it also has the burden of showing the close link between the cause and result.

Owners first argues that "it is unclear whether an Illinois court would find this test appropriate at all . . . since all injuries occurred" during the fire(s). Dkt. 105, at *10. In support, Owners cites three cases where courts refused to apply the time and space test. None of these cited cases are convincing. In two of the cases relied on by Owners, the courts held that the time and space test did not apply because the facts did not involve an ongoing omission. *Ware*, 983 N.E.2d at 1122 ("[U]nlike *Addison*, [this] is not a case in which multiple injuries were sustained over time due to an ongoing negligent omission."); *Certain Underwriters at Lloyd's, London v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 336 (Tex. App. 2013) ("Because this case does not involve an ongoing omission, we need not apply the 'time and space test'"). By contrast, this case *does* involve allegations of an ongoing omission by the insured. The last of the three cases cited by Owners involved the application of Missouri law, a jurisdiction that has not adopted the time and space test. *Fellowship of Christian Athletes v. AXIS Ins. Co.*, 758 F.3d 982, 985 (8th Cir. 2014).

In furtherance of its argument that the time and space test is inapplicable here, Owners asserts that "Illinois courts *only* invoke this variation for cases in which injuries occurred weeks and/or months apart." Dkt. 126, at *20 (internal citation omitted) (emphasis added). But *Addison*, the case in which the Illinois Supreme Court recognized the time and space test, involved the drowning of two boys that "could have been seconds or minutes apart." 905 N.E.2d at 756. The boys had left their home on April 30, 1997, and their bodies were found on May 3, 1997, meaning the most time that could have passed between their injuries was four days, not the weeks or months Owners alleges is required for this test. *Id.* at 749. Owners has not established, nor has the Court's

12

research revealed, any minimum amount of time between injuries required for application of the time and space test.

Nonetheless, Owners argues that an application of this time and space test still leads to the conclusion that there was only one occurrence that caused all of Claimants' injuries. Dkt. 105, at *10. As Owners puts it, this is because the alleged cause – inadequate smoke detectors – "occurred simultaneously and at the exact same location" as the result – the arsons and Claimants' injuries. *Id.* To support this argument, Owners turns to the now familiar case of the porch collapse in *Ware* and a New Jersey case from which *Addison* adopted the time and space test.

As already discussed, *Ware* involved a porch collapse that started on the third floor and ultimately led to injury for the people standing on all three levels. Causation was not disputed, and the court determined that this constituted one occurrence. The *Ware* court did not apply the time and space test but said that if it had, it would have reached the same result. 983 N.E.2d at 1123. This was because "the trial court [] was presented with more than sufficient evidence to conclude that the cause of plaintiffs' injuries was so closely linked in time and space as to be considered by the average person as one event." *Id.*

The New Jersey case involved two boys playing near a pool after having entered through a dilapidated fence. *Doria v. Ins. Co. of N. Am.*, 210 N.J.Super. 67, 509 A.2d 220, 221 (App. Div. 1986). One boy fell in and the other immediately attempted to help but fell in himself. *Id.* The New Jersey court held that these events constituted one occurrence because the boys went through the fence together, they became exposed to the same danger at the same time, there was no change in circumstances "during the intervening seconds between" the boys' falls, and the second boy's fall was a result of his attempt to save the first boy. *Id.* at 224-25.

The Court finds *Addison* more instructive than *Ware* and *Doria* for a number of reasons. First, it was decided based on a fully developed trial record, not at summary judgment. *Addison*, 905 N.E.2d at 749-50. Second, the insured's liability, stemming from two boys who perished in an excavation pit on his property, arose from the insured's negligent failure to properly secure and control his property, and the insured (like Step Seven here) committed no intervening act between the injuries of each boy. *Id.* at 754-55. Third, as the court stated, "[i]n accepting a per-occurrence limit, [the insured] could not have intended to expose himself to greater liability by allowing multiple injuries, sustained over an open-ended time period, to be subject to a single, per-occurrence limit." *Id.* at 755. "As a result, in situations where a continuous negligent omission results in insurable injuries, some limiting principle must be applied." *Id.*

That limiting principle is the "time and space" test. *Id.* The insured's negligence in *Addison* consisted of an omission, the failure to maintain the property (similar to what has been alleged – but denied – here). *Id.* at 756. The court said "[w]here negligence is the result of an ongoing omission rather than separate affirmative acts, a time and space test effectively limits what would otherwise be a limitless bundling of injuries into a single occurrence." *Id.* "Under that test, 'if cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event,' then the injuries will be deemed the result of one occurrence" *Id.* (quoting *Doria*, 509 A.2d at 224). The time and space analysis, however, must be made on a case-by-case basis. *Id.*

Perhaps most instructive from *Addison* is the result. Important to the Illinois Supreme Court's analysis was the fact that the two victim boys did not become trapped in the excavation pit simultaneously. As such, the court determined:

> There was little evidence to support the insurer's claim that the injuries suffered by the two boys were the result of a single occurrence. The police investigators could

14

not determine how closely in time the boys became trapped, suggesting it could have been seconds or minutes apart, but acknowledging there was no way to know. Nor could the medical experts give a time of death with certainty, or indicate how closely in time the two boys had died. Any opinions on these issues of timing would be inappropriately speculative.

*Id.* (citation modified). Based on such substantial uncertainty (which itself was based on a fully developed trial record), the court was persuaded that the insurer could not "meet its burden of proving that the two boys' injuries were so closely linked in time and space as to be considered one event." *Id.* at 756-57. And because the insurer could not meet its burden, the court held that the injuries to the two boys constituted two occurrences, and thus, the "defendants' claims [were] subject to the general aggregate limit rather than the lower per-occurrence limit." *Id.* at 757.

Perhaps Owners will prevail if a finder of fact, in determining liability (and specifically causation), finds that Steven Coleman's arsonist behavior was the sole proximate cause of the deaths and injuries at issue here, in which case Step Seven may not be liable at all. Or perhaps Owners' single occurrence argument will prevail if a finder of fact determines that those deaths and injuries were so closely linked in time and space as to be considered one event. Or perhaps the fully developed record will be less conclusive, with remaining substantial uncertainty as to the sequence or timing of the deaths and injuries at issue (in which case Owners may not be able to carry its burden of proving that all deaths and injuries were so closely linked in time and space as to be considered one event). But the critical facts necessary for any such determination remain disputed, precluding summary judgment on this record.

## CONCLUSION

For the foregoing reasons, Owners' motion for summary judgment is denied.

Entered: July 18, 2025                    By: _____

                                                Michael F. Iasparro
                                                United States Magistrate Judge

15