IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Owners Insurance Company, | |
| *Plaintiff*, | Case No. 3:22-cv-50396 |
| *V.* | Honorable Michael F. Iasparro |
| Step Seven LLC, et al, | |
| *Defendants*. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Owners Insurance Company's motion for the Court to reconsider its July 18, 2025 Memorandum Opinion and Order denying Owners' motion for summary judgment or, in the alternative, grant leave to appeal. For the reasons discussed below, the Court denies Owners' motion to reconsider and denies Owners' alternative motion for leave to appeal.

## FACTS

As this Court's July 18, 2025 memorandum opinion and order ("the MSJ Order") provided a full factual account, only a brief summary of the relevant events is necessary here. On June 1, 2020, Steven Coleman, a non-insured third-party, set two fires at an apartment building owned by Step Seven. Those fires resulted in the injuries and deaths of several individuals ("Claimants") who filed suit against Step Seven alleging negligent property maintenance. When the fires were set and the injuries occurred, Step Seven was insured by Owners under an insurance policy ("the Policy") that provides coverage for "bodily injury."

Owners brought this action for declaratory judgment to determine its rights and obligations under the Policy. Specifically, Owners sought a declaration limiting any recovery to the per-occurrence limit described in the Policy. The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy further explains that the per-occurrence limit does not take into consideration "the number of (a) insureds, (b) claims made or 'suits' brought, or (c) persons or organizations making claims or bringing suits."

## STANDARD OF REVIEW

Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, motions for reconsideration serve a limited function: "to bring the court's

attention to newly discovered evidence or to a manifest error of law or fact." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003).

Owners, as the party moving for reconsideration, bears a heavy burden to establish a manifest error. *See Patrick v. City of Chicago*, 103 F.Supp.3d 907, 912 (N.D. Ill. 2015). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## DISCUSSION

As a preliminary matter, the Court notes that Owners' motion suffers from many of the ills commonly associated with motions for reconsideration – it continually cites back to previously rejected arguments; it relies on facts that, while not included in the parties' Rule 56.1 statements of facts, are not new; and it puts forth new arguments that were not properly raised at the motion for summary judgment stage. Owners' motion also relies on mischaracterizations of the MSJ Order and the July 2023 Memorandum Opinion and Order denying Defendants' motion to dismiss ("the MTD Order"). Perhaps most importantly, Owners seems to disregard the standard repeatedly emphasized throughout the MSJ Order—the Court's denial of Owners' motion for summary judgment did not decide that Defendants' "legal theories" are correct and show multiple occurrences; the Court's denial simply held that Owners has not met *its burden* of establishing that there is no genuine issue of material fact leading to the conclusion, as a matter of law, that there was only one occurrence.

To summarize the MSJ Order, the Court found the relevant parts of the Policy to be unambiguous but that factual disputes precluded the Court from making a determination about the number of occurrences. Dkt. 131, at *7. Illinois courts have adopted the cause test, and so the Court considered whether Owners had definitively shown that Claimants' injuries and deaths could be attributed to a common cause. *Id.* at *7-9. The MSJ Order explained that a genuine dispute of material fact – a dispute over the existence of separate, intervening acts (separate and intervening from the fires set by Coleman and separate and intervening from each other) – precluded summary judgment in Owners' favor. *Id.* at *8-11. The Court further explained that even if Owners had satisfied the cause test by showing only a singular separate and intervening act under its uninterrupted continuum of negligent omissions theory (as framed by Owners), neither could Owners satisfy the time and space test at this juncture as there remains a genuine dispute about the close link in time and space of the alleged cause(s) and result(s). *Id.* at *11-15. Because of these factual disputes, the Court could not decide in Owners' favor under either test at summary judgment.[1]

---

[1] Owners is critical of the Court's MSJ Order in part because it reads the Order as requiring Owners to satisfy both the cause test and the time and space test. But the MSJ Order nowhere said that both tests must be satisfied. What it said was that neither test has been satisfied at this stage because genuine

After again reviewing the record and case law, the Court finds that Owners neither presents newly discovered evidence nor identifies a manifest error of law or fact. In rendering the MSJ Order, the Court examined the evidence and case law submitted by the parties and found Owners was not entitled to summary judgment. After reviewing this motion, the Court remains convinced of that position. Thus, Owners' motion for reconsideration is denied. Further, the MSJ Order rested on factual disputes so an interlocutory appeal would be inappropriate.

## I. Time and space test

Owners begins by challenging the Court's decision to "require the insurer to satisfy both the cause test and the time and space test." Dkt. 137, at *7 (citation modified). The MSJ Order explains that "even assuming that Owners had shown one occurrence under the cause test, it also has the burden of showing the close link between the cause and result." Dkt. 131, at *12. This does not, as Owners alleges, represent the Court applying a general rule that all insurers must satisfy both tests. Rather, the MSJ Order explained that, *under these facts* (and as framed by Owners), Owners must satisfy the time and space test which, at least at this point, it has failed to do.

### a. "Triggering" the time and space test

Importantly, it is Owners that has framed Defendants' allegations in the underlying lawsuit as constituting only a singular ongoing negligent omission. Defendants have not so limited their allegations. Owners asserts that the time and space test is only "triggered" when two requirements are met: (1) the "alleged conduct is exclusively [an] ongoing negligent omission;" and (2) "that ongoing omission causes multiple injuries over an open-ended time period." Dkt. 137, at *7-8. Owners alleges that the Court erred "by holding that mere minutes is an open-ended period of time to trigger the time and space test." *Id.* at *21 (citation modified). However, the Court is not convinced that an open-ended time period is truly a trigger and, even if it is, Owners has not shown that the time period here is insufficient for the time and space test to apply and, once applied, for a trier of fact to conclude that there were multiple occurrences.

As Step Seven correctly points out, the phrase "open-ended time period" appears only once in *Addison*, the very case that adopted the time and space test in Illinois. Dkt. 143, at *5 (citing *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 905 N.E.2d 747, 755 (2009)). The *Addison* court found that "in situations where a continuous negligent omission results in insurable injuries, some limiting principle must be applied." 905 N.E.2d at 755. The *Addison* court further explained that "[w]here negligence is the result of an ongoing omission rather than separate affirmative acts, a time and space test effectively limits what would be a limitless bundling of injuries into a single occurrence." *Id.* at 756. Thus, the only "trigger" outlined by the Illinois Supreme Court is that the situation involve an ongoing negligent omission which, as pointed out above, is how Owners has framed this case.[2]

---

disputes of material fact remain. As it pertains to the time and space test, and as more fully discussed below, the potential applicability of that test is driven more by Owners' own characterization of Step Seven's alleged ongoing negligent omission than anything else.

[2] Owners asserts that the Court's reading would make the cause test "a relic whenever a case involves ongoing omissions" as "the exception would swallow the rule." Dkt. 137, at *22-23. However, Illinois

Even assuming that Owners is correct that the time and space test is only applied in cases involving ongoing omissions that cause multiple injuries over an open-ended period of time, Owners has failed to establish that no reasonable trier of fact could determine that the multiple injuries at issue here were caused over an open-ended period of time. The Illinois cases cited by Owners simply provide the Court with two guideposts: the *Addison* court implied that a period of days or weeks would be considered open-ended while the *Ware* court explicitly stated that a single event is not. 905 N.E.2d at 755; *Ware v. First Specialty Ins. Corp.*, 2013 IL App (1st) 113340, 983 N.E.2d 1115, 1122-23. Even accepting the five-minute time period propounded by Owners (a time period which remains contested), Owners has provided no authority to support its bald assertion that this time period "is [not] remotely close to satisfying the 'open-ended period of time' requirement." Dkt. 147, at *23.

As it did in its motion for summary judgment, Owners again relies on the *Ware* decision to support its contention that the time and space test is inapplicable. Again, the Court finds this reliance to be misplaced. The *Ware* court found that the test was inapplicable because it was "not a case in which multiple injuries were sustained over time" nor were there "multiple incidents occurring over an open-ended period of time." 983 N.E.2d at 1122-23. Despite Owners' contentions to the contrary, there is still a dispute in this case about whether the injuries were sustained over an open-ended period *and* a dispute as to whether there were multiple incidents that occurred over an open-ended period. The *Ware* court's finding that the time and space test was inapplicable is simply not controlling given the different factual context at play here.

### b. Satisfying the time and space test

As explained in the MSJ Order, "if cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event, then the injuries will be deemed the result of one occurrence" under the time and space test. *Addison*, 905 N.E.2d at 756. As it is the insurer's burden "to prove that a limitation or exclusion applies," it is Owners' burden here to show that the time and space test leads to the conclusion that there is but one occurrence.[3] *Id.* at 752, 756-57 ("Addison (the insurer) cannot meet *its burden* of proving that the two boys' injuries were so closely linked in time and space as to be considered one event." (citation modified)); *Ware*, 983 N.E.2d at 1122 ("[T]he insurer bore the burden of proof" to satisfy the time and space test.).

Owners argues that there is sufficient evidence here to satisfy this test. As the Court addressed this argument and analyzed the time and space test in the MSJ Order, Owners must now provide the Court with a legitimate reason to reconsider its original analysis. Owners has not done so. Instead, Owners mischaracterizes the MSJ Order and relies on that mischaracterization to make

---

applies the cause test "to determine the number of occurrences under an insurance policy" irrespective of whether that policy is triggered by affirmative acts (e.g., *Munroe*, 614 F.3d 322) or by negligent omissions. *Addison*, 905 N.E.2d at 753. The exception (or "limiting principle," in the words of the Illinois Supreme Court) would thus not apply in all cases, but only potentially in cases where negligence is the result of an ongoing omission and there are multiple injuries.

[3] To be clear, this is not a brightline rule that all insurers must satisfy both the cause test and the time and space test. Rather, Owners has this burden because it has characterized this case as one "where a continuous negligent omission result[ed] in insurable injuries," so the limiting principle of the time and space test "must be applied." *Addison*, 905 N.E.2d at 755.

a wholly new argument. Owners explains that "the MSJ Order found *Addison* 'more instructive' due to the 'substantial uncertainty' on when each boy fell in." Dkt. 137, at *24 (quoting Dkt. 131, at *15). The Court did find *Addison* more instructive, but not because of the substantial uncertainty about the timing of the victims' deaths in that case. Rather, the Court found *Addison* more instructive first because the court there had the benefit of a fully developed trial record. Dkt. 131, at *14. Second, the insured committed no intervening acts between the injuries of each boy (akin to no intervening acts by Step Seven here between the victims' deaths/injuries). *Id.* And third, in *Addison* (and likely here), the per-occurrence policy limit left the insured more exposed to liability than he could have intended. *Id.*

Although the *Addison* court did raise the issue of factual uncertainty, that was done to show that the insurer could not meet its burden, not to suggest that certainty in itself evidences a close link. *Addison*, 905 N.E.2d at 756-57. Similarly, the *Doria* court did not, like Owners alleges, find "one occurrence because there was no uncertainty as to when the injuries occurred." Dkt. 137, at *24. Rather, the *Doria* court found one occurrence because the injuries "resulted from a single cause" and "the injuries' temporal and spatial connection compelled the court to conclude that they resulted from a single occurrence." *Doria v. Ins. Co. of N. Amer.*, 210 N.J. Super. 67, 509 A.2d 220, 224 (App. Div. 1986) (citation modified). Thus, it is not certainty, or lack thereof, about the facts of the case that is material to the time and space test. It is the close link in time and space of the cause(s) and result(s).

Under the time and space test then, Owners has the burden of proving that "cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event." *Addison*, 905 N.E.2d at 756 (citing *Doria*, 509 A.2d at 224). Owners argues that "injuries minutes apart in a single building does not satisfy the time and space test." Dkt. 137, at *24 (citation modified). However, Owners provides very little support for this assertion. As to the time aspect, Owners simply asserts that there is no uncertainty which, again, is not what is needed to satisfy the test. *Id.* But regardless, as Defendants point out, there is uncertainty (i.e., a factual dispute) about the sequence and timing of the victims' injuries and deaths in this case. *See* Dkt. 144, at *11. Turning to the space part of the test, Owners draws a parallel between the facts of this case and those in *Ware*. Dkt. 137, at *25. However, "the time and space analysis must be made on a case-by-case basis" and, once again, the Court finds that the facts of *Ware* are easily distinguishable from those found here. *Addison*, 905 N.E.2d at 756. *Ware* involved "a discrete incident" that caused injuries to residents and guests on all three levels. 983 N.E.2d at 1123. Here, however, Defendants continue to maintain that there were multiple, discrete events that caused Claimants' injuries. Therefore, as the Court previously held in the MSJ Order, "the critical facts necessary for any such determination [about the close link in time and space] remain disputed, precluding summary judgment on this record." Dkt. 131, at *15.

### c. The "undisputed" time period

While briefly discussed above, the Court believes it appropriate to more thoroughly address Owners' assertion that "there is no dispute [] that the deaths and injuries occurred within approximately five minutes." Dkt. 137, at *22. The Court need not accept this asserted five-minute time period simply because "the official reports [] say what they say." Dkt. 147, at *21. Owners' assertion that this time period is undisputed is not an accurate characterization of the parties' positions. None of the parties provided any sort of time frame in their Rule 56.1 statements beyond

5

describing the date the fires were set. As such, the Court does not have to adopt Owners' new timeline. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011). The parties did, however, include some time frames in their briefings at the motion for summary judgment stage. Owners itself alleged that the cause and result "all occurred simultaneously" while the Alma Walker defendants alleged that "different instances of negligence, *occurring at different times* and under different circumstances, constitute the separate causes of death and injury." Dkt. 105, at *10; Dkt. 119, at *7 (emphasis added).

Now that Owners has put forth this five-minute period for the first time, Defendants have had the opportunity to dispute the accuracy of that statement and have done exactly that. *See* Dkt. 142, at *2 ("Said times are speculative and nothing more than guesswork."); Dkt. 143, at *10 ("[T]he conclusion of the actual facts to this analysis is material and disputed."); Dkt. 144, at *10 (Owners' description of the events "ignores the more likely reality that not every injury and death actually occurred at precisely the same second, approximately five minutes before the first fire trucks even arrived on scene.").

Moreover, Owners' new allegation of a five-minute time period is based on information found in exhibits from Defendants' Rule 56.1 statements. Dkt. 147, at *21. Thus, this is certainly not new evidence "that [Owners] could not with reasonable diligence have discovered and produced during the pendency of the motion" for summary judgment. *Caisse Nationale*, 90 F.3d at 1269 (citation modified). The Court then cannot reconsider the MSJ Order based on such evidence even if it was not contested.

## II.    Cause test

Owners also finds several alleged errors in the Court's analysis of the cause test. But again, Owners has failed to show a manifest error.

### a.    Ongoing negligent omission

Owners asserts that only the alleged conduct of the insured should be considered for purposes of the cause test and contends that the Court erred by considering the fire itself, the number of injuries, and the actions by the non-insured (i.e., Coleman setting the fires). Dkt. 137, at *9-10. But the entire factual context matters. As explained in the MSJ Order, "Claimants have asserted multiple acts of negligence on the part of Step Seven that they believe to be separate and intervening." Dkt. 131, at *11. As it did in its motion for summary judgment, Owners continues to bundle all of Step Seven's alleged negligence into one continuum of ongoing omissions and argues that this single continuum cannot be intervening. The Court addressed this argument in the MSJ Order, but Owners finds alleged errors in that analysis.

First, Owners argues that the Court erred by holding "that each negligent omission in property maintenance can be its own occurrence." Dkt. 137, at *16. The MSJ Order includes no such holding. Rather, at page 8 of the MSJ Order, which Owners cites in support of its contention that the Court so held, the Court admonished Owners for inaccurately quoting from the *Munroe* decision a total of seven times in its motion for summary judgment briefings. Dkt. 131, at *8. The reason for this admonishment was because Owners repeatedly misquoted the language from *Munroe* to alter the context of that court's actual point, which was that "no Illinois court has held

6

that *a single claim or injury* can give rise to multiple occurrences merely because several acts of negligence combined to produce a single result." *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 326 (7th Cir. 2010). Owners now appears to be doubling down on that mischaracterization and suggests it is the Court that got it wrong. This is a multiple claim and injury case, the distinguishing point the Court was making. Owners' decision to omit that critical context from the quote at least seven times was not well-taken then, just as Owners' mischaracterization of the MSJ Order is not well-taken now. As before, "[t]his gamesmanship not only undermines Owners' credibility; it also sinks its motion." Dkt. 131, at *8. As the alleged error of finding each negligent omission to be its own occurrence simply cannot be found in the MSJ Order, it cannot possibly provide the foundation for the Court's reconsideration.

Owners next argues that the Court erred by accepting the possibility that one or more of Step Seven's negligent omissions were intervening acts as "ongoing omission is the antithesis of intervening." Dkt. 137, at *18.[4] Notably, as explained in the MSJ Order, Owners did not properly address this allegation of intervening negligent omissions when it was raised by the Faith Walker defendants in the motion for summary judgment proceedings. Dkt. 131, at *11; *see also RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.*, 108 F.4th 997, 1005 (7th Cir. 2024) ("A party may not raise an argument for the first time in a motion for reconsideration."). Regardless, the Court does not agree that ongoing omissions cannot possibly intervene.

To illustrate the point, consider this hypothetical sequence of events: Steven Coleman sets the fires; because of Step Seven's negligence, the nearest fire alarm is not working and doesn't get triggered; the smoke detector outside Apartment 4 does eventually get triggered and Claimants in that apartment are alerted to the danger outside their door; Claimants in Apartment 4 try to escape but they find that the fire has spread to the point where they cannot get past it so they must instead find an emergency exit; Claimants in Apartment 4 do not have access to an adequate emergency exit because of Step Seven's negligence so they are forced to escape out the window or wait until first responders arrive to help them do so.[5] Perhaps in this hypothetical scenario, Claimants in Apartment 4 could have escaped out an emergency exit despite the faulty fire alarm but the lack of emergency exits *intervened* and prevented them from doing so. *See TIG Ins. Co. v. Old Republic Ins. Co.*, No. 18-12548-LTS, 2021 WL 2211435, at *4 (D. Mass. May 5, 2021) ("These are two distinct and specifically identified safety failures on the part of Dimeo/RMT. McNulty was injured by these distinct safety failures, and not by 'repeated exposure to substantially the same general harmful conditions.'"). Even with just two negligent omissions in this scenario – faulty fire alarm and inadequate emergency exits – the second omission intervened after the first "had been set in motion." *Munroe*, 614 F.3d at 326.

Nonetheless, Owners persists in its argument that negligent omissions cannot be intervening and turns to the language of the Policy in support. As Owners sees it, "the Policy

---

[4] Owners implies that this assertion can find some support in *Addison*. However, nowhere in *Addison* do the terms "ongoing omission" and "intervening" even appear in the same paragraph as each other let alone in a context that would suggest that they are each other's "antithesis."

[5] The Court would like to make it abundantly clear that this is simply a hypothetical scenario and the Court makes no finding that this exact situation, or anything like it, accurately represents what actually happened. More importantly though, Owners has provided nothing to show or even suggest that this (or some other similar scenario) *isn't* what happened. Again, the facts remain in dispute.

unambiguously contemplates" claims involving multiple negligent omissions by including "continuous or repeated exposure to substantially the same general harmful conditions" in the definition of an occurrence. Dkt. 137, at *19. While some courts have applied this exposure clause to cases involving negligent omissions (e.g., *RLI Ins. Co. v. Simon's Rock Early Coll.*, 54 Mass. App. Ct. 286, 765 N.E.2d 247 (2002)), the continuous exposure clause is more often applied in cases involving "an intrinsically harmful product [that] results in similar kinds of injury." *U.S. Gypsum Co. v. Admiral Ins. Co.*, 268 Ill.App.3d 598, 643 N.E.2d 1226, 1259 (1994); *see also Fina, Inc. v. Travelers Indem. Co.*, 184 F.Supp.2d 547, 552 (N.D. Tex. 2002) ("[I]t is difficult to accept the contention that a failure to protect was a 'condition' to which all claimants were repeatedly or continuously 'exposed.' Such an interpretation places considerable strain on the plain and ordinary meaning of the terms 'condition' and 'exposure.'"). A large number of courts have explained that the exposure clause does not encompass cases involving injuries sustained from a more direct cause than the negligent omission(s) that triggered liability. *See Koikos v. Travelers Ins. Co.*, 849 So.2d 263, 268 (Fla. 2003) ("The victims were not 'exposed' to the negligent failure to provide security. If the victims were 'exposed' to anything, it was the bullets from the intruder's gun."); *Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101, 104 (7th Cir. 1996) ("'Continuous or repeated exposure to conditions' sounds like language designed to deal with asbestos fibers in the air, or lead-based paint on the walls, rather than with priests and choirboys. A priest is not a 'condition' but a sentient being, and of course the victim was never 'exposed' to the Diocese's negligent supervision.").

Even under Owners' theory that negligent omissions like the ones here fall under the exposure clause, a single occurrence has not yet been definitively established. Owners describes "Step Seven's *only* alleged liability" as its "failure to maintain working smoke detectors or fire alarms." Dkt. 137, at *19 (quoting Dkt. 131, at *8) (emphasis added). But this is another mischaracterization of Defendants' arguments and the Court's analysis. The MSJ Order did not say that inadequate smoke detectors and fire alarms were the "only alleged liability" as Owners' quote may suggest. Rather, the Court described this as *one example* of Step Seven's negligent property maintenance. Dkt. 131, at *8. In fact, there have been at least seventy-two negligent omissions alleged by Defendants, a fact that Owners is certainly aware of as it faulted Defendants for proposing such an "extreme" number at the motion for summary judgment stage. Dkt. 105, at *8.

The Court is not convinced that Claimants' "exposure" to these seventy-two alleged negligent omissions can accurately be described as "the same general harmful conditions." Maybe it is or maybe it isn't. Several courts have explained that where there are multiple harmful conditions, it is possible that injuries may result from different conditions or combinations of conditions (and thus multiple occurrences may be found). *See, e.g., Home Indem. Co. v. City of Mobile*, 749 F.2d 659, 663 (11th Cir. 1984) ("[E]ach discrete act or omission, or series of acts or omissions, on the part of the City of Mobile which caused water to flood and damage properties instead of draining properly is a single 'occurrence' within the terms of the insurance policy."); *United Nat'l Ins. Co. v. Assurance Co. of Am.*, No. 10-cv-1086-JAD-NJK, 2015 WL 7185453, at *9 (D. Nev. Nov. 12, 2015) ("[T]he record shows that R.B. Petersen's negligence was directed toward separate **groups** of homeowners and can be separated into several discrete **series** of acts or omissions." (emphasis in original)); *Frankenmuth Mut. Ins. Co. v. Gates Builders, Inc.*, No. 20-00596-KD-N, 2022 WL 1322261, at *9 (S.D. Ala. May 3, 2022) ("[T]o find there was only one occurrence, the evidence must show that the faulty construction that caused the balcony damage

8

is the same type of faulty construction that caused damage to the substrate."). For example, it is possible that Claimants on the lower level were exposed only to the same general harmful condition of Step Seven's negligent maintenance of smoke detectors while Claimants on the upper level were exposed to the same general harmful condition of Step Seven's negligent maintenance of emergency exits. Thus, despite all the Claimants being in the same property, their claims may be "based on exposure to different conditions [and may] not constitute a single occurrence." *Cont'l Cas. Co. v. Hennessy Indus., Inc.*, 2019 IL App (1st) 180183, 131 N.E.3d 568, 576.

### b. Proximate cause

Owners goes on to draw a distinction between the cause test used to determine the number of occurrences and the proximate cause analysis used to determine liability. Dkt. 137, at *10. According to Owners, the MTD Order recognized this "fundamental distinction" while the MSJ Order improperly equated the two. *Id.* at *10-12 (citation modified). This argument is based on a misconstruction of the holdings in both Orders.

First, the MTD Order did not rule that proximate cause is irrelevant to the cause test as Owners contends. The MTD Order did not adopt any legal test but simply found that determining the number of occurrences *"does not necessarily* equate with determining the number of negligent acts that proximately caused the injuries." Dkt. 67, at *10 (emphasis added). The MTD Order also considered the possibility of "some factual overlap" but found that such overlap did "not necessarily show an interference with the state court's determination of liability." *Id.* at *12.

Owners' argument also misconstrues the MSJ Order by suggesting that the MSJ Order described proximate cause as "the heart" of the issue. Dkt. 137, at *12. Not so. The Court described "the heart of the dispute" as the parties' "disagree[ment] on whether there were 'separate and intervening human acts' which give rise to the claims under the Policy." Dkt. 131, at *9. As Owners correctly explains, the cause test as it has been defined in Illinois requires a determination of whether there is an uninterrupted continuum (and thus one occurrence) or there are separate and intervening acts (and thus multiple occurrences). Dkt. 137, at *7. Presumably, Owners would agree that the parties' dispute over this determination – the very determination that decides the number of occurrences – is accurately described as "the heart of the dispute." The MSJ Order also did not, as Owners alleges, equate the two analyses. There was certainly some factual overlap between the two but, as explained in the MTD Order, that "alone does not necessarily show an interference with the state court's determination of liability." Dkt. 67, at *12.

Additionally, the Court is not convinced that proximate cause is, as Owners alleges, "irrelevant to the Seventh Circuit's cause test." Dkt. 137, at *13. In support of this argument, Owners points to the lack of discussion of proximate cause in the *Munroe* decision. *Id.* The Court finds this lack of discussion irrelevant given that the *Munroe* court had no occasion to discuss proximate cause as there was no dispute that "[a]ll of [the causes] came together at the same time to produce a single set of circumstances that caused a single accident." 614 F.3d at 326. Here, there remains a dispute about whether there was a single set of circumstances and whether there was a single accident.

Notably, several Illinois appellate courts have described the cause test as "the Court's inquiry [into] whether there was one *proximate*, uninterrupted and continuing cause which resulted

in all of the injuries and damages." *U.S. Gypsum*, 643 N.E.2d at 1259 (quoting *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.*, 597 F.Supp. 1515, 1527 (D.D.C. 1984) (emphasis added); *see also Vill. of Camp Point v. Cont'l Cas. Co.*, 219 Ill.App.3d 86, 578 N.E.2d 1363, 1371 (1991) (same). The *Ware* court also seems to align with this understanding of the relationship between proximate cause and the number of occurrences. In *Ware*, the court explained that there was only one occurrence because there was "no dispute that the collapse was the sole and *proximate* cause of all plaintiffs' injuries" and there was no "allegation that any separate or intervening acts or circumstances contributed to their injuries." 983 N.E.2d at 1121 (emphasis added).

This potential for overlap is further evidenced by a comparison of the cause test with Illinois courts' analysis of proximate cause. Again, the cause test will lead to a finding of one occurrence if there is "an unbroken or uninterrupted continuum," while multiple occurrences will be found where there are "separate and intervening human acts." *Munroe*, 614 F.3d at 325-26 (citation modified). Proximate cause similarly looks for a "continuous sequence of events unbroken by any effective intervening cause." *Skolnik v. Allied Prop. and Cas. Ins. Co.*, 2015 IL App (1st) 142438, 45 N.E.3d 1161, 1170 (2015). It is hard to imagine how, despite these being separate determinations, there would never be any overlap between these two incredibly similar legal tests. Thus, in line with the MTD Order, the Court maintains that the cause test used to determine the number of occurrences and the proximate cause analysis used to determine liability are separate and distinct inquiries. However, the Court does not agree with Owners' assertion that there is no overlap between the two.

Owners further argues that "a *dispute* on proximate cause . . . does not prevent the declaratory judgment action from deciding the policy *in the event of that liability*." Dkt. 137, at *13 (emphasis in original). That is correct. Step Seven's denial of liability does not preclude summary judgment. As explained in the MTD Order, this action is "seeking a declaration under the Policy as to the coverage limits owed to the injured parties in the event of liability" while "the state court tort complaint . . . seeks a determination as to liability and damages." Dkt. 67, at *4-5. Thus, as the Court already explained, "[l]iability is at issue, but is not a question presented to this Court." Dkt. 131, at *1.

However, the Court did not deny Owners' motion for summary judgment because of a dispute on proximate cause. The Court denied Owners' motion for summary judgment because "there are disputed allegations of separate, intervening acts." Dkt. 131, at *9. As explained above, these two determinations may have some factual overlap, but such overlap does not prohibit the Court from concluding that a genuine dispute as to the existence of separate, intervening acts precludes summary judgment.

### c. Increased exposure

Finally, Owners asserts that "the Faith Walker defendants misrelied on certain 'increased the exposure' language." Dkt. 137, at *20 (citation modified). It is not clear why Owners felt it appropriate to include this argument in its motion for reconsideration. A motion for reconsideration is a vessel to correct *the Court's* manifest errors of law or fact, not to rehash old arguments against the opposing parties' arguments (especially those that did not provide the foundation for the Court's decision). In the MSJ Order, the Court recognized that this argument was raised by the Faith Walker defendants and Owners did not properly address it. Dkt. 131, at *11. The Court also

included the increased exposure language as it appears in the *Nicor* opinion's articulation of the cause test. Dkt. 131, at *8 (citing *Nicor, Inc. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 232 Ill.2d 407, 860 N.E.2d 280, 294 (2006)). However, the Court did not rely on the increased exposure language to deny Owners' motion for summary judgment and Owners does nothing to explain how the Court's inclusion of this language was a manifest error.

## III.    Interlocutory appeal

Owners alternatively moves for "the Court to find a 'substantial ground for difference of opinion' for interlocutory appeal." Dkt. 137, at *25 (quoting 28 U.S.C. § 1292(b)). Typically, "federal courts of appeals are empowered to review only final decisions of the district courts." *Microsoft Corp. v. Baker*, 582 U.S. 23, 137 S.Ct. 1702, 1707 (2017) (internal quotation marks omitted). In the alternative, the Court may certify a non-final order, such as the MSJ Order, for appellate review if certain criteria are met. 28 U.S.C. § 1292(b). The Seventh Circuit has outlined these criteria as follows: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). However, "[u]nless *all* these criteria are satisfied, the district court may not and should not certify its order" for an interlocutory appeal. *Id.* at 676 (emphasis in original).

As discussed throughout the MSJ Order and this opinion, the Court denied Owners' motion for summary judgment because a material dispute remains as to whether there were separate and intervening human acts giving rise to the underlying claims. Thus, the MSJ Order is premised on factual disputes, not a question of law (let alone a controlling and contestable one). *See id.* at 677 ("'Question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted."). "Disputing whether the Plaintiff raised a genuine dispute of material fact is not a proper basis for interlocutory appeal." *Reigh v. WestRock Packaging Sys., LLC*, No. 3:20-CV-1046-TLS, 2024 WL 3811825, at *3 (N.D. Ind. Aug. 13, 2024); *see also In re Archdiocese of Milwaukee*, 482 B.R. 792, 799 (E.D. Wisc. 2012) (same).

## CONCLUSION

Owners has failed to show that the Court made a manifest error of law or fact and thus has not provided the Court with any reason to revise its prior ruling. Additionally, Owners has not presented a pure question of law within the meaning of 28 U.S.C. § 1292(b). Accordingly, Owners' motion to reconsider, or in the alternative, for leave to appeal [137] is denied.


Entered: December 1, 2025                    By: _____

                                                  Michael F. Iasparro
                                                  United States Magistrate Judge